Case number 23-11208, Ruff v. Destination Development Partners. Mr. Donheiser? May it please the court, my name is Mark Donheiser and I represent the appellant Suzanne Ruff. I'm going to jump right in, not go over the rather elaborate facts because they're set forth very much in the briefs and because this court, seven months ago, determined a related case involving essentially the same parties, involving enforcement of the exact same Dallas County Probate Court judgment. I want to make two main points today, but before I jump right into those, I think there's one fact that the court should keep in mind as it listens to these arguments and determines the case, and that is that the judgment of the probate court, and I'll just refer to it as the judgment, finds that Michael Ruff owed a fiduciary duty to my client, Suzanne Ruff, and I'm going to use the words Mike and Susie because they're both Ruffs, owed her a fiduciary duty and that he failed to make an accounting. That's in the judgment. Now, under substantive Texas state law, which applies here, when a fiduciary fails to make an accounting, the burden of proof shifts to the fiduciary to show what assets do not belong in the fiduciary estate. I think that's important to keep in mind throughout this. Now, the first substantive issue I want to address is the bankruptcy court's mistaken interpretation of the constructive trust provision in the judgment. Remember, this judgment doesn't just award $50 million in damages. It has two constructive trust provisions, one for real property and one for entities, and we're mainly dealing with the real property provision. And the bankruptcy court held, in essence, that because Mike Ruff's name as an individual does not appear on any of these deeds, the constructive trust cannot apply. He never owned the property. Well, that simply ignores the actual language of the constructive trust provision. Remember, this is a—the judgment confirms a AAA arbitration award. The arbitration panel wrote a very broad constructive trust provision because of what Mike Ruff had been doing, creating numerous entities and moving the stolen assets around. Those—some of those entities, including nine of the TANF appellees, are listed on Exhibit A to the judgment as having been formed—found that they were formed with monies or assets misappropriated from Susie. The constructive trust provision that we're dealing with—it's on page 20 of my brief, if you want to flip to it just to see the exact language—applies to, and I'm quoting, any real property belonging to or originating from property belonging to Suzanne Ruff. Now, clearly, the deed that gave—gives the three appellees who have real property—there are three of which have property—come from the property that Suzanne Ruff deeded to the first named appellant, who at that time was called Icarus Investments IV, and I'll just call it Icarus IV for convenience. That belonged to Susie because it says it in the deed. Susie is giving this property to Icarus IV. Isn't that the ranch? That's the ranch. That's the 7R Ranch, and 7R is for seven Ruffs because Susie and Art Ruff had five children, so there are seven of them. She deeded it to this Icarus IV on the express representation by Mike that he needed to develop it for her, which is why, of course, the probate court judgment puts a constructive trust on it because he didn't do that. Now the constructive trust provision, unlike the bankruptcy court's interpretation, does not say that it had—that it only applies to property owned by Mike Ruff. It says, and again I'm quoting, the exact language is, held or owned, in whole or in part, by Michael Ruff in any capacity. Now, since the deed was from Susie to Icarus IV and not Mike Ruff individually, the bankruptcy court doesn't apply, but the judgment says—doesn't just say owned, it says held or owned. The bankruptcy court ignored the word held, and it ignored the phrase in any capacity. Just to be clear on the facts, the debtors, the entities involved here are Seaham Resort, Speck, Thack, and Sundance Lodge, right? Those— Ah, Seaham Resort, Speck, Thack, and Sundance Lodge. Those are the only ones we're interested in. The others were dismissed or something. They were dismissed, but they are the appellees. They're the ones that filed the brief, those seven, not the three that actually own property. I think what Judge Duncan is asking is we're trying to figure out what are the properties at issue in this appeal. Right. Those—the last three on the list of the title of the case, so— And just so I can likewise clarify, are those covered by the subsections HHH through KKK? Yes. I know they're not enumerated, but— Right. Parties agree that— Well, they don't agree. That's why I'm going to rephrase. The descriptions provided in H's through K's, in your view, embraces the properties where— Right. And that's the only evidence that was before the Bankruptcy Court. Now, the Bankruptcy Court correctly found that Mike Ruff controls all 10 appellees, including the three with property. That all 10 are owned in whatever capacity, as some are limited partnerships, some are LLCs, some are owned by an entity called the MAR Living Trust, and MAR is Michael A. Ruff, of which Michael A. Ruff is the trustee. So, all decisions for all 10, up until the time the trustee was appointed, were made by Michael A. Ruff. When was MAR Living Trust created? I think 2005, Your Honor. 2005. Okay. Now, remember, these are old dates. Art Ruff died in 1999. Suzanne started giving Mike Ruff control of the assets right away. The probate court case was filed in 2011, and we're still arguing about this. And it's not just this court. There are cases all over Texas. Just as you saw, the JMV case was in the eastern district of Texas Bankruptcy Court. This one is in the northern district, and there are cases in state courts in Collin County, Dallas County, and, of course, Palo Pinto County. This case is only about Palo Pinto? Yes, Your Honor, and it's only about these 10. Technically, we have asked for the constructive trust to be applied to the other 7, but nobody really cares. They're empty shells. It's the last 3 on your list, CM Resorts, SpecFAC. Now, in that eastern district bankruptcy case that this court decided 7 months ago, we dealt with the other constructive trust provision. The one as to entities, and there, the bankruptcy court, there, Mike Ruff's wife, whom he had put on the LLC as the owner, argued that constructive trust can't apply because Mike's name isn't on this entity. Now, the language in the provisions, if you look in the record, are slightly different. It says, Mike's interests of whatever nature. This court affirmed the trial court's finding that the constructive trust applied to that entity. Is it a different trial court, obviously, eastern district? Yes. It was Chief Bankruptcy Judge Rhoades in the eastern district. This is Judge Morris in the northern district. And this is Judge Pittman, and that was District Judge.   The district judge in the eastern district was Judge Maison, and he wrote a very short opinion, and then this court wrote a very short opinion back in March, I think. What is that called again?  JMV. In re JMV. It hadn't been decided by this court at the time, so look in my reply brief for the correct site. It wasn't decided until after we filed our brief. You're talking about March 1? Right. Yes, you're right. Now, the bankruptcy court was very skeptical that a constructive trust could be that broad, that anything might control, but that's because of the way he did his fraud by creating literally dozens, scores of entities and moving the property around. And the Texas Supreme Court has said that constructive trusts, the form that they take, are numerous, as numerous as the modes by which property can be obtained through bad faith and unconscientious acts. In other words, constructive trusts can fit what happened, and that's exactly what the AAA, confirmed by the probate court, did in this case. Now, the second issue I want to jump to is the bankruptcy court's discussion of, well, is this the same property? Susie D. did this to Icarus IV, but we're dealing with these other three entities now. They got it. How do we know it's the same property? What the bankruptcy court called the tracing issue. Now, first, as to CM Resorts, this bankruptcy court, I mean, we have a 40-page oral findings of fact and conclusions of law, but he doesn't mention the deeds. He doesn't discuss the deeds. Susie signed a deed to Icarus IV, which is now destination development, and it says it in the deed. It says that it was, changed its name. On Mike's representation, it would be for her benefit, developed for her benefit, which of course didn't happen. And that deed from Susie to Icarus IV was recorded in volume 1220, page 320 of the deed records of Palo Pinto County. Icarus IV then deeded 1,800 acres, the bulk of the property we're dealing with here, to Appalee CM Resorts. Now, that deed describes the property as 1,800 acres from the deed to Icarus IV recorded in volume 1220, page 320 of the deed records of Palo Pinto County. In other words, the deed by which CM Resorts holds references the very deed that Susie gave. It in itself shows that. And since I'm apparently out of time, thank you, Your Honor. Thank you. You reserve five minutes. Ms. Lindauer, did I pronounce that correct? That was correct. May it please the Court, Joyce Lindauer here. I'm here on behalf of the appellees in connection with the appeal before the court. Your Honors, the appeal before the court is raised really on a very narrow issue. It's regarding the effect of this constructive trust that counsel was discussing with the  What's important, I believe, is if you look at . . . first of all, you have three impartial parties involved here. You have a bankruptcy trustee, Mr. Spicer, who was the party to the underlying case in the bankruptcy court. You have the bankruptcy court, and then you have Judge Pittman, the district court. All of them said the same thing. And the bottom line is, is the record lacked sufficient evidence on several points for the court to find anything with regard to Ms. Ruff's claims. The other important point, too, was all of her causes of action in the original lawsuit that she brought, including fraud, breach of fiduciary duty, and conspiracy, were waived prior to trial. I guess one thing I don't understand about that is that the arbitration panel found that Mike Ruff committed all sorts of improprieties, right? Correct. That's why they issued a $49 million judgment in constructive trust. Right, but . . . Why is it relevant that she waived any additional claims? I mean, she's got that. That's the judgment. Well, because . . . think about it this way. If she had a claim for fraud, fraudulent transfer, any of those, against the other nine parties that were the parties . . . Now, Mike wasn't a party to the adversary proceeding. It was the other nine entities. So at the end of the day, it's the spec-fac and all the ones that you just mentioned that were the parties to the . . . She brought no affirmative claims against them beyond just a request for declaratory relief. That was her sole argument, other than she's got some privity arguments and alter ego arguments But at the end of the day . . . Adversary proceeding and bankruptcy, that's what you mean? Yes. Okay, what about the original . . . what about the arbitration panel that found Mike Ruff committed all sorts of improprieties, resulting in a $49 million judgment in a constructive trust? Yeah, but . . . What about that? Well, yeah, except . . . except, they didn't . . . what they put before the bankruptcy judge was the question of the scope and effect of the constructive trust. Well, I mean, it applies to the ranch. I'm sorry? Doesn't it just apply to the ranch? No, and I'll tell you why you can't make . . . It doesn't apply to the ranch. Well, no, and I'll tell you why you can't draw that conclusion, okay? Look at . . . and this is part of the record. You have the modified and corrected final judgment, and I did this yesterday. I took a good look at it to see exactly what it said. Get it in my head again. Look at the real estate provision in there, okay? So the HH through the KK, okay, right. That's 4,696 . . . 4,696.34 acres. HHH through KKKKK, why they refer to it that, I don't know, but those subsections refer to how much? 4,600 . . . 4,696.34. And that's not the ranch? That is not the ranch. What is it? 1,800 and something, and the reason, if you go back . . . What is it if it's not the ranch? Well, no, that's the whole point that Judge Morris was making with them is if you want me to find this is the ranch, show me the deeds that trace it. Counsel, that is relevant if you're asking the judge to impose a constructive trust. If you're going and asking a judge to say, hey, impose a constructive trust on this land, obviously you have to trace, you have to specify, et cetera. But Judge Duncan is asking you a different question, and it's the same one I have, which is there's already a constructive trust. It already exists. It's a final judgment. So the question . . . It's over and done. So if you have a problem and you think, oh, gosh, Judge, I don't know what the 4,696 acres is, you take that up with the Dallas Court of Appeals. Were you the counsel for Mr. Ruff in the Court of Appeals? But there was an appeal. There was an appeal. And there was a petition to the Supreme Court of Texas, and it all lost. So that, as a matter of state court judgment, is now final, done, and over. Why are we talking about traceability and who knows what the land is? It's in the judgment. Right. But if you didn't know what the 4,696 acres was, you take that up with the state court. You don't collaterally attack it in bankruptcy. Well, except read what the bankruptcy . . . unless you disagree with what the bankruptcy judge concluded. Well, that's the question presented to us, isn't it? And the district court. You have to basically find both of those courts were incorrect in requiring Suzanne to trace the real estate. Here's what it says. Suzanne has failed to trace any of the real estate acquired by the debtor defendants back to the constructive trust imposed with respect to the real estate held or owned by Michael in any capacity. Counsel, I've read it. Yeah. Can you hear my question? Sure. I've read that. Right. My question for you is, after they have the constructive trust, what is your source of law that says you still have to impose traceability to effectuate that trust in a bankruptcy proceeding? Because I think you still have to understand . . . Counsel, I'm asking for a citation for legal authority. I don't have one with me today, Your Honor. I understand how trusts work, right? And so do state courts. And the state court imposed one through this arbitration judgment. And now it's in front of us. And so now the only question to the bankruptcy judge is, how do I give effect to the state court judgment? That's the only question. We don't talk about traceability anymore unless you can point to me a case anywhere in the United States. I'll take it from a bankruptcy judge, a district judge, a court of appeals, in the Fifth Circuit, outside of the Fifth Circuit. I would take one in France. I have no idea what legal authority you could have for the idea that once we have the constructive trust, we go back and re-litigate it again to make sure that we've done the traceability correctly. Well, okay. And I apologize. I do not have a case right here on point for you. That's not to say that I couldn't do some quick research and perhaps find one for you. And I'm happy to provide a supplemental brief on that very specific issue that you're asking about. But at the end of the day, the problem that we have is we have bankruptcy cases. We have entities that are in bankruptcy. Those entities own certain real estate. And the bankruptcy judge and the district court judge both said, if you want me to apply this constructive trust to the real estate that is in these bankruptcy cases, show me how I can do that. And there was no evidence presented to do that, to show that the spec-fac three acres is the same as anything that's on here, that the other five or six acres is anything on here. There is greater acres here. What is your theory as to what the H through K provisions cover? If not what opposing counsel asserts, what do H through K cover? I think they cover real estate in Palo Pinto County, but I couldn't tell you what real estate. I have no idea. Under your theory, what conveys through H through K into the constructive trust for opposing parties' benefit is nothing? Is nothing. Nothing that can be identified. Is that how we read judgments? Normally how I read them, if they're not clear, and in this one, it's clearly not clear. You're having to make assumptions that certain things are part of it. Look, I could understand if this were a real estate transaction between two parties. I would totally understand where you're coming from in that context. I sell you X property for, you know, whatever, millions of dollars, and all I say is this. I get that. As my colleagues have alluded to, that is a radically different context than we're in. We are faced with not just an arbitration award, but a judgment, a probate court, state court judgment, codifying that constructive trust imposed by the arbitration panel. And what you're telling us is it means nothing? Well, let's just put it this way. I think it lacks the clarity to actually be enforceable. Let's put it that way. I think it lacks clarity to be able to be enforced. We are not told which entity owns these particular tracts, where are they located. There's greater acreage here than what is discussed in the bankruptcy case. Clearly, if you add up the acreage in the bankruptcy case, and we did that— Just to be clear, there's nothing else in the world that is held or owned in whole or in part by Michael Ruff in any capacity in Palo Pinto County. Well, first of all, Michael Ruff— There's nothing else, right? Michael Ruff doesn't own in any capacity any property in Palo Pinto County. That's one of the things that the courts focused on is the language of the constructive trust was very specific to Michael Ruff— Do you think this was a Scribner's error or an intention by the arbitration panel to use a lot of words? Hold on. Do you think this was a Scribner's error at most or a deliberate attempt by the arbitration panel to use all these words to convey nothing? I think— Let me just be honest. I think it was not the intention of the arbitration panel to convey nothing, but I think they— They just messed up. No, no. I think they were very specific on the words that they used. So, they said Mike's interest. Again, here's— So, I understand it's covered through an entity, not him personally, but he's a trustee and all that. I get all that. Well— What does this convey, then? In your theory, it's nothing, right? It would convey whatever this 4,696.34 acres is in Palo Pinto County. Which is? Which means— I think you're saying nothing. No. Which means you would have to go get the deeds and trace the deeds to track to 4,696.34 acres that is referenced here. That's what you would have. Now, the other way you could have done it, and Suzanne Ruff didn't do this, she could have brought us the information that was given to the arbitration panel or the district court or the probate court that was the basis for them making this award. And we don't have that. And that's part of the frustration here is they want you to, by their side of the case, without giving you all of the facts, and then they say, well, it was our burden. It was not our burden. It was their burden. If they want you to believe that this 4,696.34, then why didn't they bring us the underlying evidence that supported this— Because, counsel, they have a final judgment. And this is what I—I share the frustration. I'm with you on this. And I'll tell you, if I was a lawyer, and I respect the fact that you weren't the lawyer in Dallas County Court, but if my client, if I represented a very wealthy client and he received a constructive trust imposed by a state probate court in a final judgment and a $49 million judgment, and I didn't know what was subject to the constructive trust in my client's assets, I would go to the Court of Appeals and have a meltdown. And I would say, Court of Appeals, oh my gosh, my client is on the receiving end of a final judgment and we don't know what it is. We can't trace it. We don't know what the 4,696 is. This is horrific. Okay? And so if I was Mr. Ruff, I would be very upset about it, and I would be very upset with my lawyer for not making this argument, right? Because like—I realize we don't have ineffective assistance of civil appellate counsel, but like if your lawyer messes that up, I hear you, and that would be very frustrating, right? Because you should go to the Court of Appeals and get a clarification with the trustees. But we are now years, seven years down the road, and we're a federal court. We don't get to just go piercing behind state court judgments and like ask for supporting documents and do traceability as if, like Judge Ho was saying, you're conveying Blackacre. If you're conveying Blackacre, yes, meet some bounds, show me the deeds in the entry and go down to the county courthouse in Palo Pinto and give me everything. But that's not what we're doing. So it's a constructive trust. The whole point of it is to impose inequity on all ways that he may own it, directly, indirectly, in whole or in part, in any manner, blah, blah, blah. And so I just—I don't understand how we can go beyond that unless you have a case that says we can. Well, I hear you. I hear you completely with those issues. I think, again, though, what it boils down to—and both of the bankruptcy court and district court found the same way on this issue, which is if you want me to enforce your constructive trust, Suzanne Ruff, then show me what property it covers. It's not good enough to just say it covers 4,696.34 acres in Palo Pinto County. I think she had the burden on that at this level to point that out to the court and did not do that. But just to clarify, you're not submitting that there's some other property that this could be? Well, clearly, there's other property besides what was in the bankruptcy cases because Judge Morris totaled that acreage up, and it was just short of 2,000 acres. So there's another— I guess my point, though, is they're saying—because maybe I am missing something—they're saying this clearly covers X. Are you saying, no, it could actually be Y, not X? Or I think what you're really saying, which is it's not clear enough and therefore it conveys nothing. Okay. So there's no Y. There's no alternative theory. No, there—well, look, I know there's greater acres in the arbitration award than are in the bankruptcy. That I know. And you can easily put those numbers side by side. So there's some acres that are somewhere else. I don't know. Those are not before you. Your point is not—your argument is not it's not X, it's Y. Your point is it's not just X. It could be X plus Y. Or—  Exactly. There's no doubt about X. Right. Right. Right. And I think, to your point, Judge, is who bore the burden at the bankruptcy court level? So you had litigation between a bankruptcy trustee, Mr. Spicer, who's here, and Ms. Ruff. Those were the parties before the bankruptcy court, okay? And the issues before the bankruptcy court were narrowed down in the joint pretrial order. A lot of the issues were dropped out. And clearly, we all agree that they were not asking for the imposition of a new constructive trust. They were asking for an interpretation of the existing constructive trust. And what both the bankruptcy court and the district court found—and these are findings of fact. These are not conclusions of law. They found that there was no evidence to support how we get to tying the property in the bankruptcy cases to the constructive trust. Mr. Donheiser was just talking about very specific deeds and with numbers on them that one can trace the property to. Is that not in the record? So in the record, in Judge Morris's opinion—and you'll find this, and we summarized it also—about the first six or seven, maybe more, pages of his actual oral ruling that he gave, he does do some of the tracing. And he says, for example, thereafter, on or about December 15, 2011, Icarus Limited executed a special warranty deed to transfer to Sundance Lodge certain tracts of land described as specified law, it's two, three, and four, of the ranch subject to certain noted exceptions and reservations. And then he goes on and goes through a number of the deeds. But after he goes through all of the deeds, he says, Suzanne cannot succeed on count two for the very simple reason that there is no evidence that any of the debtor-defendants was a transferee of constructive trust property from Michael. Instead, the evidence presented showed only that certain of the debtor-defendants, in particular Sundance Lodge, SpecFac, and CM Resort, received real estate transfers from parties other than Michael, and no evidence was introduced of Michael's existence in the chain of title of any such real estate.  Well, so, you know, it seems to me that the entire premise of the bankruptcy court's oral ruling and then the district court's ruling is to read the language, held or owned in whole or in part by Michael Ruff in any capacity, in a way that says, well, if the property here is held not by Michael and not owned by Michael, but by some other entity, then therefore it doesn't fall within the constructive trust. I mean, I read that in the district court's opinion. Is that not the case? Well, I mean, that's the way I read it. Okay. So that's what they're saying. That's not a legal — that's not a factual point. That is a legal interpretation of a judgment. And so, let me just ask you this. I mean, the three debtors we have here, CM Resort, SpecFac, and Sundance Lodge, is it disputed or undisputed that these are owned, controlled, whatever verb you want to use, by a trust called, what is it, MAR Living Trust? So the MAR Living Trust is the equity owner of those entities.  And who — MAR stands for Michael A. Ruff. Michael Ruff is the trustee, and he has various family members that are the beneficiaries of that trust. Why does that undisputed fact not come within held or owned in whole or in part by Michael Ruff in any capacity? If I may add, especially when it says specifically including H through K. Because I think that the way you read held or owned, if you are the trustee of a trust, you don't own the trust. You act as the trustee of the trust. You are not the owner of the trust. And then the only question is, held by Michael Ruff in any capacity. And again, the MAR Living Trust entities, while they may be equity participants, the deeds — you have to look at the deeds themselves, which we don't have a complete record of. We all admit that. But — Maybe we need to remand to get a better record. I'm sorry? Maybe we should remand, then, and get a better understanding of the facts. Because on the legal point of how to read a judgment, I just don't get that. I mean, this is like word games. The MAR Living Trust happens to stand for Michael A. Ruff. And he's the trustee? I mean — Well, but again, you've got to figure out what ownership does that entity have as it relates to the actual deeds of conveyance. That's an important aspect here. Look — What's worth — I respect the formalist approach you're taking. It's just, to me, when you add specifically included, and you refer to H and K, doesn't that remove any doubt? Again, except there are scrimmage errors, I certainly get Judge Oldham's — Well, you know, I mean, there were two judges — — discussion with you about what a lawyer should have done. Well, there are two judges smarter than me that seem to think that the H through K didn't get it. I mean, you've got a bankruptcy judge — you've got Judge Morris, a bankruptcy judge, and you've got Judge Pittman, a district court judge, who both concluded that H and K wasn't sufficient to actually figure out what the property was. So again, I'm not here trying to — I'm just — I'm saying — Your theory prevailed below. The question is whether it'll prevail here. Well, I mean, I really think that it should because, again, we don't — look, lawyers and parties get do-overs to a certain extent. They don't get complete do-overs. If you missed it in the bankruptcy court and you didn't put on your evidence that you needed to put on, then you should be done. That's it. That's the end. You had your day in court. And look, if you read Judge Morris's opinion very carefully — and I've read it a thousand times now — every time you read it, no evidence, no evidence, no evidence, no evidence. It's not that he necessarily disagreed. But he couldn't find the evidence. It wasn't put on. Thank you. Your time has expired. Thank you, judges. Appreciate it. Appreciate your argument. Mr. Donheiser, you have five minutes. Thank you, Your Honor. I may not need it all, but first, the court asked multiple questions about, well, what is it, and never got an answer. What is this property? You never get an answer from the owners. I think that says a lot. Now, as to the — Well, their view is it was your burden to put on the evidence. You didn't put on the evidence. No. HHH through KKK is not, if you go back to the language, a constructive trust exists on property belonging to or originating from property belonging to Suzanne Ruff, including but not limited to HHH through KKK. So even if there was — I will admit, there was some — I don't know if you want to call it sloppiness or laziness, certainly an oversight by somebody. These could have been specified. In the judgment? Yeah. It wasn't impossible to spell out in H through K not just the size of the acreage, the amount, but — Sure. Actual designations, right? I'm not talking about arbitration you've done, but under the AAA commercial rules of 2009, you can't — once the award is issued, you are very limited on what you can complain about to the panel. You cannot complain. You can complain about mathematical errors and things like that, but you can't complain about the form of the judgment. That's the 2009 commercial rules of the American arbitration, if anybody cares. Counsel, what was the nature of the evidence presented to the arbitration panel? Did you present deeds and — Yes. All of the deeds, going back from when Art Ruff first began collecting this property through when the marital property division, which gave Suzanne Ruff the ranch and Art Ruff the other holdings, all the way up through the deed from Suzanne to Icarus. And remember, it's not just HHH through KKK. It's all property originating from Suzanne Ruff. How can they say that the deed from Suzy to Icarus didn't come from Suzanne Ruff? We also think it was proven that this was HHH through KKK. We don't need that, but it's also in the record. They say there's no evidence. They put Suzanne Ruff on the stand. She affirmatively looked at HHH through KKK, they handed it to her, what is this? And she said, that's the 7R Ranch. That is all of the property I had in Palopinto County. Now — and it's in our — if you look at our reply brief, she said it several times. We don't need that, but we've got it. It's — she says it several times. They kept cross-examining, what is this, when they showed her the subordination agreement. The trustee had to borrow money to pay insurance, so we've got a subordination agreement that Suzanne had to sign. That's the 7R Ranch. She also said, that's all of the property I had in Palopinto. Now there's this argument, well, this is only 2,000 acres and it gives four. That's because Mike split it up. It's in the record, I don't have a cite to it, that he split it up among other entities. The other 2,000-some-odd acres are pending in Palopinto District Court, where the rest of the case was remanded. It's with other entities Mike did, and if you just look at what was remanded, that was the other things. If there are no further questions, I'll give you your 30 seconds back. Thank you. Thank you, Counselor. Thanks to both sides. The case is submitted and we're adjourned for the day.